FLOYD R. LAMB, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Lamb v. Commissioner
Docket Nos. 8575-76, 8555-79, 8556-79, 8557-79.
United States Tax Court
T.C. Memo 1985-512; 1985 Tax Ct. Memo LEXIS 113; 50 T.C.M. (CCH) 1209; T.C.M. (RIA) 85512; September 30, 1985. Charles McNelis, for the petitioners. J. L. Millward, for the respondent. WRIGHT
MEMORANDUM FINDINGS OF FACT AND OPINION WRIGHT, Judge:* In these consolidated cases, respondent determined deficiencies in and additions to petitioners' *114 Federal income tax as follows: Additions to Tax
Year
Deficiency
Sec. 6653(b) [2]
1966
$2,462.65
$1,231.33
1967
1,304.97
652.49
1968
1,100.48
550.24
1969
19,304.66
9,652.33
1970
60,462.51
30,231.26
1971
15,241.38
7,620.69
1972
49,930.93
24,965.47
After concessions by both parties, the issues for decision are (1) whether the statute of limitations bars the assessment of a deficiency and an addition to tax for each of the years in issue, (2) whether petitioners are liable for additions to tax under section 6653(b) for each of the years in issue, and (3) whether certain payments received in 1971 by petitioner Floyd R. Lamb constitute taxable income. FINDINGS OF FACT Some of the facts are stipulated and are found accordingly. The stipulation of facts and accompanying *115 exhibits are incorporated herein by reference. [3]
Petitioners resided in Las Vegas, Nevada, when the petitions herein were filed. Floyd R. Lamb filed joint Federal income tax returns for 1966 with his then wife, Eleanor S. Lamb, and for 1967, 1969, 1970, and 1971 with his then wife, Nancy Lamb. He reported his status as "unmarried head of household" and "single" on the returns he filed for 1968 and 1972, respectively. Although both of Floyd Lamb's spouses during the years in issue petitioned this Court, the term "petitioner" will refer to Floyd Lamb, unless otherwise indicated. Petitioners reported their income and deductions on the cash method, except for certain items undisputed herein. Petitioner graduated from high school and attended one-half semester of college. One of petitioner's occupations is that *116 of a cattleman. Petitioner was a partner in the Buckhorn Land and Cattle Company (Buckhorn) in Alamo, Nevada, prior to 1969, at which time he began operating the ranch as a sole proprietorship. In 1966, petitioner was employed by the Nevada Bank of Commerce, which later changed its name to Nevada National Bank, and he eventually served as director, president, chief executive officer, and chairman of the board. Petitioner was elected to the Nevada State Senate representing Lincoln County and served in that capacity until 1965 when he moved to Las Vegas, situated in Clark County. Subsequently, he was elected to the State Senate representing Clark County and served as a state senator and chairman of the Senate Finance Committee for the State of Nevada during the years in issue. Carl A. Brown, P.A., of Las Vegas, Nevada, prepared petitioner's tax returns for the years 1957 through 1975. The substance of Brown's agreement with petitioner was that he would prepare petitioner's return from the information he was furnished. Although Brown did, at times, contact those people and institutions named by petitioner as sources of information, Brown was under no obligation or duty to otherwise *117 solicit or gather information for use in the preparation of petitioner's return. Petitioner did not advise Brown of any stock transactions other than the ones which were reported. In accordance with petitioner's instructions, his secretaries during the years in issue gave certain items pertaining to petitioner's tax return, including brokerage statements, to petitioner, and forwarded other items directly to Brown. On December 31, 1965, petitioner incurred a long-term capital loss of $50,000 from the worthlessness of certain stock. Pursuant to an examination of petitioner's 1965 Federal income tax return, the Internal Revenue Service allowed the capital loss. One-thousand dollars of such loss was deducted in 1965 and the remainder was carried forward. 1966
From 1962 to 1965, petitioner was a member of the board of directors of First Western Savings and Loan Association, a subsidiary of First Western Financial Corporation (First Western Financial). In 1966, he commenced employment at the Nevada Bank of Commerce, a wholly-owned subsidiary of First Bancorporation, which was spun-off from First Western Financial. In connection with his acceptance of employment with the Nevada *118 Bank of Commerce in 1966, petitioner thought it appropriate and desirable to hold stock in First Bancorporation, the parent company of his employer, instead of in First Western Financial. Therefore, on or about February 1, 1966, petitioner contacted Walter D. Bradley, the trust officer of the Nevada Bank of Commerce, and asked for his assistance in disposing of petitioner's First Western Financial stock and acquiring First Bancorporation stock. The June, 1966, Bradley left the employ of the Nevada Bank of Commerce and accepted a position as a salesman with Blythe and Company, a Reno, Nevada, stock brokerage firm. During 1966, Bradley assisted petitioner by opening accounts with brokerage firms, watching the market fluctuations, ordering sales of First Western Financial stock and purchases of First Bancorporation stock, and rendering an accounting to petitioner of such sales and purchases. In 11 separate transactions during the months of February and August 1966, Bradley, acting for petitioner, caused 20,801 shares of First Western Financial stock to be sold for $81,854.48. Of that amount $81,359.75 was used to purchase 11,925 shares of First Bancorporation stock. Bradley advised *119 petitioner of the details of these transactions by way of telephone conversations, letters, and notes. Petitioner realized long-term capital gains totaling $60,143.13 from the above sale of First Western Financial stock. These gains were not reflected on petitioner's Federal income tax return for 1966 or any other year. In February, 1966, account number 19585 was opened in petitioner's name with the stock brokerage firm of Goodbody & Co. (Goodbody) in Las Vegas, Nevada. In May, 1967, account number 11673 was opened with Goodbody in the names of petitioner and his then wife, Eleanor S. Lamb. All purchases and sales of securities on these accounts were handled by Clifford Jones, petitioner's long-time friend, or by Jim Seals. Records pertaining to transactions on these accounts were maintained at petitioner's place of employment, the Nevada National Bank, by bank personnel. During 1966, petitioner, through his Goodbody account number 10585, engaged in a number of transactions resulting in a longterm capital gain of $1,313.43 and a short-term capital gain of $355.50. These gains were not reported on petitioner's Federal income tax return for 1966 or any other year. 1967
*120 During 1967, petitioner, through his Goodbody account number 10585, engaged in a number of transactions resulting in a short-term capital gain of $139.88, long-term capital gains aggregating $2,217.09, and short-term capital losses aggregating $708.77. These gains and losses were not reported on petitioner's Federal income tax return for 1967 or any other year. During 1967, petitioner's account number 10585 with Goodbody was credited with dividends aggregating $78 which were not reported on petitioner's Federal income tax return for 1967 or any other year. Interest expense of $123.24 was charged to petitioner's Goodbody account number 10585 during 1967. This expense was not claimed as a deduction on petitioner's Federal income tax return for 1967 or any other year. 1968
During 1968, petitioner, through his Goodbody accounts numbered 10585 and 10673, engaged in a number of transactions resulting in a short-term capital gain of $3,257.03, long-term capital gains aggregating $1,587.76, and a long-term capital loss of $1,265.97. These gains and losses were not reported on petitioner's Federal income tax return for 1968 or any other year. On three separate dates during 1968, *121 petitioner's Goodbody account number 10585 was credited with dividends aggregating $109.45 and petitioner received dividends from various other sources totaling $46.55. These dividends were not reflected on petitioner's Federal income tax return for 1968 or any other year. During 1968, interest expense of $163.36 was charged to petitioner's Goodbody accounts. This expense was not claimed as a deduction on petitioner's Federal income tax return for 1968 or any other year. 1969
Sale of stock during 1969 through petitioner's Goodbody account number 10585 resulted in a short-term capital gain of $549.46. This gain was not reported on petitioner's Federal income tax return for 1969 or any other year. On six separate dates during 1969, petitioner's Goodbody account number 10585 was credited with dividends aggregating $201.70. These dividends were not reported on petitioner's Federal income tax return for 1969 or any other year. Interest expense of $208.33 was charged to petitioner's Goodbody account number 10585 during 1969. This expense was not claimed as a deduction on petitioner's Federal income tax return for 1969 or any other year. During 1969, petitioner sold 5,000 *122 shares of First Bancorporation stock, the parent company of the Nevada National Bank (petitioner's employer), for $85,000, resulting in a long-term capital gain of $53,390.51. This gain was not reported on petitioner's Federal income tax return for 1969 or any other year. The proceeds from the sale of the First Bancorporation stock were credited to an "agency account" in petitioner's name with the trust department of the Nevada National Bank at Reno, Nevada. Within a week or two, $45,000 of the $85,000 was deposited in petitioner's checking account in Security National Bank in Las Vegas, Nevada, and was used to liquidate some of petitioner's obligations and the remaining $40,000 was invested in U.S. Treasury Bills. The sale of the First Bancorporation stock and the purchase of the Treasury Bills was handled by the trust department of the Nevada National Bank upon petitioner's instructions and with his knowledge and consent. On maturity of the Treasury Bills, the trust department reinvested the proceeds in additional Treasury Bills and other securities which generated interest income in the amount of $2,017.57 during 1969 On December 23, 1969, $40,253.57 of the above $40,000 ($39,420 *123 principal plus $833.57 interest income) was withdrawn and deposited in petitioner's checking account. Agency account transactions required petitioner's authorization. There was no agreed-upon procedure for providing petitioner with information concerning agency account transactions; such information was furnished only upon petitioner's request. Petitioner's return preparer had no access to the agency account. For 1969 petitioner claimed interest deductions from various sources aggregating $2,692.90; the allowable interest deduction for that year is $967.48. Petitioner reported interest income from various sources totaling $1,107.13 for 1969. The parties have agreed that the correct amount of interest income for that year is $3,213.07. During 1969 petitioner realized income of $4,735.03 from cattle sales. This income was not reported on petitioner's 1969 Federal income tax return. In connection with obtaining a loan, petitioner submitted to the First National Bank of Nevada a statement disclosing his financial situation as of May 31, 1969. In that statement he disclosed that he carried an account with Goodbody and valued that account at $20,000. 1970
On eight separate *124 dates during 1970, petitioner's Goodbody account number 10585 was credited with dividends aggregating $275.50. These dividends were not reported on petitioner's Federal income tax return for 1970 or any other year. Petitioner also received dividends totaling $491.20 from another source during 1970. These dividends were not reported on his Federal income tax return for 1970 or any other year. For 1970 petitioner claimed an interest deduction of $7,707.50 for interest paid on his loan account at the Valley Bank of Nevada. Although the loan record in petitioner's name at Valley Bank reflects that interest in that amount was paid in 1970, the underlying loan was an accommodation for Clifford Jones who, in fact, paid the interest. The parties have agreed that petitioner's allowable deduction for 1970 interest expenses is $284.07. For 1970, petitioner reported interest income of $504.83 from various sources. Pursuant to the parties' stipulation, the correct amount of such income is $2,000.32. For many years petitioner and Clifford Jones operated Buckhorn Land and Cattle Company as a partnership. In 1969 Jones sold his interest to petitioner, who then operated the cattle company *125 as a sole proprietorship. The books and records of the company were maintained in its earlier years by Carl Brown, petitioner's return preparer, and in its later years by Clark Bingham, petitioner's son-in-law. During 1970, Bingham purchased $8,000 worth of cattle from Buckhorn and, instead of paying petitioner directly, applied the $8,000 to an outstanding loan carried in the name of Buckhorn. Also, cattle were sold by Buckhorn for $209 and $6,659.93. The two checks for these purchases were negotiated by Clark Bingham. The proceeds of these sales were not reflected on petitioner's Federal income tax return for 1970 or any other year. During 1970 Buckhorn received a check for $7,120 from the Southern Nevada Team Roping Association of which only $6,620 was deposited in the Buckhorn bank account. Only the deposited amount was reported as income. On petitioner's Federal income tax return for 1970 the cost of livestock sold by Buckhorn was overstated by $78,553.96. For 1970, petitioner claimed a deduction for gasoline, fuel, and oil of $4,370.00 and claimed a deduction on Schedule F (Farm Income and expenses) for interest of $7,694.09. The parties have agreed that the allowable *126 deductions are $4,188.06 and $6,295.15, respectively. 1971
On April 19, 1971, the trust department of the Nevada National Bank, at petitioner's request, sold 312 shares of First Western Financial for $777.15, resulting in a long-term capital gain of $554.03. This gain was not reflected on petitioner's Federal income tax return for 1971 or any other year. Petitioner directed that the proceeds of this sale be transferred to a savings account in his name. On eight separate occasions during 1971 petitioner's account with the brokerage firm of Merrill Lynch, Pierce, Fenner & Smith (Merrill Lynch), formerly Goodbody & Co., was credited with dividends aggregating $277. These dividends were not reflected on petitioner's Federal income tax return for 1971 or any other year. For 1971 petitioner claimed a deduction of $1,322.91 for interest paid to the First National Bank. Petitioner had no outstanding loan from that bank during 1971 and paid no interest to that bank. Pursuant to agreement of the parties petitioner's allowable deduction for interest in 1971 is $187.53. For 1971 petitioner reported interest income totaling $602.11 from various sources. The parties have agreed *127 that the correct amount of such income is $1,985.50. During 1971 petitioner received payments totaling $2,600 from Harrah's Club (a Reno, Nevada, gambling casino and hotel) which were not reported on his Federal income tax return for 1971 or any other year. On his 1971 return petitioner claimed a net farm loss of $17,017.56, whereas there was actually a net farm profit of at least $10,190.73. 1972
Petitioner's Federal incom tax return for 1972 understated the net income from Buckhorn by at least $47,713. [4]
On five separate dates during 1972 petitioner's Merrill Lynch account was credited with dividends aggregating $56.50. These dividends were not reported on petitioner's Federal income tax return for 1972 or any *128 other year. During 1972, petitioner also received dividends from another source of $189 and interest income of $94.45 which were not reported on his Federal income tax return for 1972 or any other year. During 1972, petitioner sold an undeveloped parcel of land and realized a long-term capital gain of $30,000 of which only $18,000 was reported on his Federal income tax return for that year. In 1976 petitioner was charged, in a four-count indictment, with violations of section 7206(1), making and subscribing a false Federal income tax return, for 1969, 1970, 1971, and 1972. Petitioner was acquitted as to all counts. In his notices of deficiency, respondent determined a deficiency and further asserted an addition to tax for fraud under section 6653(b) for each of the years in issue. OPINION The central issue is whether the statute of limitations bars assessment of the deficiencies for the years in issue. Generally the amount of any tax must be assessed within three years after a return is filed. Sec. 6501(a). However, tax may be assessed "at any time" if respondent proves that the taxpayer's return was false or fraudulent with the intent to evade tax. Sec. 6501(c)(1). *129 Thus, absent proof of fraud on petitioner's part, respondent's assessment of deficiencies in the instant case is barred by the statute of limitations. The elements of the fraud under section 6501(c)(1) for limitations purposes are essentially the same as the elements of the fraud under section 6653(b), which provides for a 50 percent addition for any underpayment of tax "due to fraud." ; , affd. . The fraud envisioned by these sections is actual, intentional wrongdoing, and the intent required is the specific purpose to evade a tax believed to be owing. , cert. denied ; . Respondent must show that the taxpayer intended to evade taxes known or believed to be owing by conduct calculated to conceal, mislead, or otherwise prevent the collection of such taxes. ; *130 ;, affg. a Memorandum Opinion of this Court. The existence of fraud is a question of fact to be resolved upon consideration of the entire record. ;, affd. without published opinion ; .Fraud is never presumed, but rather must be established by affirmative evidence. . Direct proof of the taxpayer's intent is rarely available; therefore, fraud may be proved by circumstantial evidence. ; The taxpayer's entire course of conduct may establish the requisite fraudulent intent. ; The burden is on respondent to prove, by clear and convincing evidence, that *131 petitioner has an underpayment and that some part of the underpayment for each year in issue was due to fraud. Sec. 7454(a); Rule 142(b); . In the instant case it is undisputed that in each of the years in issue, petitioner had income which was not reported on his Federal income tax return. Thus, respondent has met his burden with respect to proving the existence of an underpayment for each of the years in issue. We turn then to a consideration of whether any part of the underpayment for each year was due to fraud. Respondent need not prove that the entire amount of the underpayment was due to fraud but must instead establish that some portion of the underpayment for each year is attributable to fraud. Sec. 6653(b); ; . For the following reasons, we believe that respondent has met his burden. Initially, we note that we are unconvinced by petitioner's attempt to characterize himself as just a "cowboy", unschooled and unsophisticated in business matters and completely reliant upon others for guidance in financial *132 dealings. Despite his limited formal education, petitioner is a successful businessman who for many years held high public office. In addition to his involvement in the operation of Buckhorn, petitioner was employed in various executive positions with the Nevada Bank of Commerce, later the Nevada National Bank. While so employed, he discharged his duties in a manner which resulted in his promotion to president and chairman of the board of directors. Petitioner also served in the Nevada State legislature for a number of years and, during the years in issue, served as chairman of the Senate Finance Committee for the State of Nevada. In view of his background, petitioner's claimed lack of knowledge with respect to his financial dealings is unbelievable. Petitioner argues generally that the facts of this case present none of the usual indicia of fraud or circumstances from which fraud could be inferred. These indicia or "badges" of fraud, usually present where this and other courts have found fraud, include "keeping a double set of books, making false entries or alterations, or false invoices or documents, destruction of books or records, concealment of assets or covering up *133 sources of income, handling of one's affairs to avoid making the records usual in transactions of the kind, and anyconduct,the likely effect of which would be to mislead or to conceal." (emphasis added).As petitioner himself points out, however, the Supreme Court listed these factors only "by way of illustration," not in an attempt to designate specific facts, proof of which is required before a finding of fraud can be made. In any event, we reject petitioner's argument because we find that one of these factors is present in that petitioner herein has engaged in conduct intended to mislead or conceal a portion of his assets and income. In 1966 petitioner opened two accounts with the stock brokerage firm of Goodbody & Co. During each of the years in issue these accounts were credited or charged, as appropriate, with gains and losses, dividends, and interest. Despite numerous such transactions, however, no information pertaining to these accounts appeared on petitioner's returns for the years 1966 through 1972. Petitioner maintains that he either informed Brown, his return preparer, of all stock transactions, *134 or made the records of those transactions available to him. In order to find such assertion credible, however, we must find that Brown for some reason failed to report each and every one of numerous transactions on the Goodbody accounts. We do not believe that mere inadvertence was the cause of such omissions, extending as they did over a period of seven years. Because we find it unbelievable that all of these items were omitted through carelessness or oversight in each of seven consecutive years, we are left with no alternative but to find that these omissions are evidence of a continuing scheme designed to conceal a portion of petitioner's assets and income. See . Petitioner asserts that respondent failed his burden of proof because he failed to establish that petitioner was even aware of the activities reflected on the Goodbody accounts and their tax implications. In support of his position, petitioner points out that all transactions in his name on those accounts were handled by someone else, that proceeds of all sales and dividends were credited to the account, that all stock purchases and margin interest were *135 charged to the account, and that no funds were withdrawn from the account by petitioner at any time. Once again, however, we find petitioner's assertions improbable and unsupported by the evidence. Petitioner asks us to find that he opened two brokerage accounts and deposited money therein, authorized agents to purchase and sell stock on his behalf, and allowed this mechanism to remain in place for seven years during which time he made no inquiry as to the status of the accounts. We cannot believe that a person of petitioner's experience and financial accumen would engage in such conduct. Furthermore, on a statement disclosing petitioner's financial situation as of May 31, 1969, signed by petitioner and submitted to the First National Bank of Nevada for the purpose of obtaining a loan, petitioner stated that he carried an account of $20,000 with Goodbody. Thus, petitioner demonstrated knowledge of the existence and approximate value of this account, about which information was never reported on his Federal income tax return for any year. He cannot, therefore, rely on his asserted lack of knowledge to preclude a finding of fraudulent intent. The Supreme Court has stated that "affirmative *136 willful attempt may be inferred from * * * any conduct, the likely effect of which would be to mislead or to conceal." Spies v. Commissioner,supra at 499. Petitioner's failure to report income and deduct expenses based on the activity in the Goodbody accounts is conduct which effectively concealed his assets and income and is, therefore, persuasive evidence of fraud. In his brief, petitioner maintains that he, either personally or through his secretarial staff, gave or caused to be made available to Brown all of the information necessary for correct completion of petitioner's returns. By such assertion and his admitted reliance upon Brown, petitioner seeks to demonstrate his lack of fraudulent intent. A taxpayer's reliance upon his accountant to prepare accurate returns may indicate an absence of fraudulent intent only where the accountant has been supplied with all of the information necessary to prepare accurate returns. ; (4th Cir., 1968). The evidence in this case, however, shows that petitioner failed to supply Brown with all of the information *137 pertaining to petitioner's various transactions. First, as already discussed, we have found that petitioner did not provide Brown with information concerning transactions on the Goodbody accounts. Next, although Brown admitted that, in accordance with petitioner's instructions, he did contact certain people and institutions named by petitioner as sources of information, Brown maintained that his agreement with petitioner was that he would prepare petitioner's returns from the information he received and that he had not agreed to independently gather information. Brown testified that, with respect to each year in issue, petitioner had not advised him o any stock transactions other than those which were reported. He further stated that it was not his practice to question clients as to whether they had had any stock transactions during a given period because it was not his duty to seek out information, but only to prepare returns with the information he was provided. Although Brown's testimony that he did receive some information pertaining to petitioner's taxes from petitioner's office was corroborated by the testimony of petitioner's secretaries, their testimony shows that not *138 all such information was forwarded. Petitioner's secretary in 1970 and later years stated that she gave brokerage statements to petitioner and sent to Brown other information pertaining to petitioner's taxes, but added that the provision of such information was on a "hit or miss basis." Furthermore, an employee of the trust department of the Nevada National Bank testified that there was no specific procedure for providing petitioner with information concerning transactions on his agency accounts, that such information was furnished to petitioner only upon his request, and that Brown had no access to the agency account. These facts, when considered with the numerous instances of unreported income and unclaimed deductions in the years at issue, including those resulting from activity on the Goodbody accounts, establish that petitioner did not supply Brown with the information necessary to accurately prepare petitioner's returns. Therefore, petitioner's reliance upon Brown to accurately prepare his returns cannot be taken to indicate a lack of fraudulent intent. In an attempt to negate the evidence of his fraudulent intent, petitioner asserts (1) that none of the returns for the *139 years here at issue were completed sufficiently in advance of their due dates to afford petitioner adequate time to satisfy himself as to their correctness, and (2) that respondent failed to establish whether the Forms 1040 for the years here at issue were signed by petitioner and, if so, whether they were signed in blank or after they had been prepared. We find these arguments meritless in view of the clear evidence that petitioner knowingly concealed a portion of his assets and income from his return preparer. Accordingly, they do not nullify our finding of fraud. In a final attempt to rebut the strong evidence of fraud presented by respondent, petitioner offers various explanations for several of the numerous items of understated income and overstated deductions. For example, petitioner argues that certain amounts of gain which went unreported resulted from transactions of such complexity that the failure to understand and properly report them could not be considered evidence of fraudulent intent. Respondent is not required to prove the precise amount of underpayment resulting from fraud, but only that there is some underpayment and that some part of it is attributable to fraud. *140 . We have so found. Therefore, while the proffered explanations relating to some portions of petitioner's unreported income in some years may not be wholly without merit, we need not address them. Petitioner contends that the fact that he was acquitted as to four counts of making and subscribing a false Federal income tax return under section 7206(1) is relevant to our determination here. However, it is well settled that acquittal on a criminal charge is not a bar to a civil action by the Government arising out of the same facts on which the criminal proceeding was based. ; , and cases cited therein. Thus, the outcome of the prior criminal case against petitioner is not conclusive as to his liability for civil fraud in the present case. Upon consideration of the entire record, we hold that respondent has proved by clear and convincing evidence that petitioner's tax returns for the years 1966 through 1972 were filed with the fraudulent intent to evade taxes on the part of Floyd R. Lamb. Accordingly, *141 we conclude that assessment and collection of the deficiency for each of the years in issue is not barred by the statute of limitations, and we sustain the imposition of the additions to tax under section 6653(b). [5]
The remaining issue is whether certain payments received by petitioner in 1971 constitute income. During 1971 petitioner received from Harrah's Club in Reno, Nevada, cash payments totaling $2,600. Political funds are not taxable to the political candidate by or for whom they are received if they are used for the expenses of a political campaign or some similar purpose. Cf. . The testimony indicates that these payments were made for the *142 purpose of funding petitioner's newspaper column concerning various issues of the political campaign in which he was then engaged. After careful consideration of the evidence, we find that the funds received by petitioner were so used and, therefore, did not constitute income to him. To reflect concessions and the foregoing, Decisions will be entered under Rule 155.
Footnotes
1. These consolidated cases involve the following petitioners and taxable years: docket No. 8575-76, Floyd R. Lamb (1972); docket No. 8555-79, Floyd R. Lamb and Nancy Lamb (1967, 1969, 1970, and 1971); docket No. 8556-79, Floyd R. Lamb (1968); and docket No. 8557-79, Floyd R. Lamb and Eleanor S. Lamb (1966).↩
*. By order of the Chief Judge dated November 1, 1984, this case was reassigned from Judge Perry Shields to Judge Lawrence A. Wright for disposition. ↩
2. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
3. The joint exhibits submitted herein include the transcript of petitioner's testimony, in 1976, before the Federal Grand Jury investigating alleged violations by petitioner of section 7206(1) and a portion of the transcript of petitioner's criminal trial for such violations for the years 1969 through 1972. All references herein to testimony are to those exhibits.↩
4. This understatement resulted primarily from the following: (1) the cost of cattle sold during 1972 was overstated by $31,962.94, (2) a check for $2,293.83 was received on December 30, 1972, but not deposited to the Buckhorn account during that year, and (3) a check for $10,000 was deposited to a suspense account on December 19, 1972. Respondent concedes that the above $10,000 was included in Buckhorn's income and reported on petitioner's 1973 return.↩
5. Eleanor S. Lamb and Nancy Lamb are not liable for the additions to tax under section 6653(b). They are, however, liable for the deficiencies pertaining to those years for which they filed joint returns with Floyd R. Lamb, because the finding of fraud on the part of Floyd R. Lamb for each of the years in issue removes the bar of the statute of limitations as to all petitioners. .↩